**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 19 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BOBBY DRY,

      Plaintiff - Appellant,

v.

THE BOEING COMPANY,

      Defendant - Appellee.

No. 01-3294
(Kansas)
(D.Ct. No. 00-CV-1206-MLB)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, Circuit Judge, **ANDERSON**, Senior Circuit Judge, and **O'BRIEN**, Circuit Judge.

Bobby Dry appeals the district court's determination that his former employer, The Boeing Company, did not interfere with his leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, or violate its progressive discipline policy when terminating his employment. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

**FACTUAL BACKGROUND**

Dry was employed at Boeing in 1986.[1]  Between 1995 and 1997, he utilized the FMLA on several occasions to care for his wife, Debra Michelson, who suffers from bipolar disorder.  During this period, all his requests for leave were granted and all requisite forms were completed by Dry and Boeing supervisors.

On Friday, March 6, 1998, Dry's wife was again experiencing problems as a result of her bipolar disorder.[2]  On Monday, Dry remained at home to care for his wife and, as events progressed, never returned to work.  He reported his need to be absent some time that week, and as his absence continued through March, he called approximately once a week.[3]  Each time he stated he would return to work the following Monday, but then would fail to appear for his shift or call to explain his absence.  Eventually, Dry's supervisor asked Bernie Grant, a personnel representative, to investigate and determine when Dry would return to

---

[1]Dry's employment was interrupted in 1987 when he was terminated for excessive absences.  The union intervened and negotiated the termination into a resignation.  Because of this change, Dry was able to reapply for employment and was rehired six weeks later.

[2]Although the severity of Michelson's illness allegedly required Dry's presence at home, she did not see her attending physician until her next regularly scheduled visit nearly a month and a half later, on April 15, 1998.

[3]Dry claimed he called once a week to report absences.  However, he admitted that when there was no answer, he did not leave a message or call the message machine reserved for absences.  Instead, he called back on another day.

work. When Grant's attempts at telephone contact were unsuccessful, he sent a letter on April 2 informing Dry that his leave was not authorized and that, without medical documentation, his absence constituted job abandonment. The letter requested Dry provide Boeing with medical documentation by April 10, 1998.

Although Dry testified he tried to telephone Grant Monday through Wednesday of the next week, the only telephone message for Grant was received on April 10. Grant returned the call the same day and again explained the need for medical documentation to justify the extended absences. Spurning the urgency of Grant's request, Dry asked his wife to obtain a doctor's note at her next scheduled appointment, five days later, on April 15, 1998. At that appointment, Dr. Topping, his wife's doctor, issued a handwritten note stating:

> This is to certify that Bobbie [sic] Dry has been needed at home during the illness of Debra Michelson, from the week of March 16, 1998, until the present. He is able to return to work at this time as Mrs. Michelson no longer needs him to care for her at home.

(Appellee's Supp. App. at 301.) Although the note stated Dry could return to work as of April 15, he did not do so. Instead, he called and informed Grant he had the doctor's note, but the note mistakenly did not excuse him for the week of March 9 through March 13, 1998. He did not inform Grant he was available for work.

When Dry failed to contact Boeing by April 20, Grant notified the Union that Boeing was about to begin termination proceedings and invited attempts to

reconcile the situation. On April 21, 1998, Grant drafted, but did not finalize, a letter terminating Dry for excessive absences. Grant's assistant mistakenly mailed the unsigned draft to Dry, who received it on April 22, 1998. The Union called Dry shortly after he received the mistakenly-sent termination letter and offered to help. Dry rejected this offer, stating he had already been terminated.

Dry hired an attorney and, following his attorney's instructions, contacted Dr. Topping to obtain the corrected medical documentation. Dr. Topping mailed Dry a corrected medical note, dated April 27, 1998, conveniently stating: "[t]his is to notify that Bobby Dry has been taking care of Ms. Michelson at home since 3/9/98 – 4/21/98. He is now able to return to work." (Appellee's Supp. App. at 303.) Dry allegedly mailed a copy of this new medical documentation to Boeing; however, only an empty envelope arrived on May 4, 1998. By letter dated May 12, Grant informed Dry that Boeing had received only an empty envelope and advised him if documentation was not received by May 15, 1998, the termination paperwork would be processed. The doctor's note arrived on May 15, the deadline, and Boeing credited Dry with FMLA absences from March 9 through April 21, 1998. However, the note did not explain absences after April 21, 1998. Grant, still unaware Dry had received the draft termination letter,[4] sent a formal

---

[4]Grant would not discover that the draft termination letter was sent until August 1998 when Dry testified in his unemployment compensation hearing.

letter on May 20, 1998, terminating Dry for excessive absences, effective April 21, 1998.

Thereafter, Dry filed the instant lawsuit, alleging Boeing had interfered with his FMLA rights by dismissing him from his position, and that he was fired in retaliation for taking FMLA leave. Following a bench trial, the district court held in favor of Boeing on both claims. Dry then filed a Motion to Amend the Judgment pursuant to Fed. R. Civ. P. 52(b), alleging for the first time that Boeing did not follow its progressive discipline policy. The court denied the motion. On appeal, Dry alleges Boeing interfered with his rights under the FMLA, and that it failed to follow its discipline policy.[5]

**DISCUSSION**

When considering an appeal from a bench trial, we review the district court's factual findings for clear error and its legal holdings de novo. *Keys Youth Servs., Inc. v. City of Olathe, Kan.*, 248 F.3d 1267, 1274 (10th Cir. 2001). Factual findings will be reversed only when they are "'without factual support in the record' or if, 'after reviewing all the evidence,' we are 'left with a definite and firm conviction that a mistake has been made.'" *Id.* (quoting *Manning v. United States*, 146 F.3d 808, 812 (10th Cir. 1998)).

---

[5]Dry does not appeal the district court's rejection of his retaliation claim.

## I.  FMLA Violations

The FMLA requires employers with at least 50 employees to allow their employees up to twelve weeks of annual leave to care for the employee's or a family member's "serious health condition."  29 U.S.C. § 2612(a)(1).  Upon return from FMLA leave, an employee is entitled to keep his/her previous employment position or be given an equivalent position with equivalent pay, benefits and other conditions of employment.  29 U.S.C. § 2614(a)(1).  To verify entitlement to FMLA leave, the employer may require certification by a health care provider.  29 U.S.C. §§ 2613(a), 2614(c)(3)(A).  Additionally, the employer may require an employee who has a recurrent need to take FMLA leave to "obtain subsequent recertifications on a reasonable basis."  29 U.S.C. § 2613(e).  The employee must provide the medical certification "in a timely manner."  29 U.S.C. §§ 2613(a), 2614(c)(3)(B).  Finally, taking FMLA leave does not insulate an employee from being fired for other reasons.  *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998).

Section 2615(a) of the FMLA affords two avenues for recovery for an employer's interference with an employee's FMLA rights:

(a) Interference with rights

    (1)  Exercise of Rights

        It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to

exercise, any right provided under this subchapter.

(2) Discrimination

It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

On appeal, Dry abandons his discrimination/retaliation claim under subsection (a)(2) and relies solely on 29 U.S.C. § 2615(a)(1). (Appellant's Reply Br. at 2.)

In *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, we distinguished the two separate theories of recovery under 29 U.S.C. § 2615(a). 298 F.3d 955, 960 (10th Cir. 2002). We identified subsection (a)(1) as the "interference/entitlement theory" and subsection (a)(2) as the "retaliation/discrimination" theory. *Id.* We stated in relevant part:

The interference or entitlement theory is derived from the FMLA's creation of substantive rights. If an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a deprivation of this right is a violation regardless of the employer's intent. *King v. Preferred Technical Group,* 166 F.3d 887, 891 (7th Cir. 1999). In such a case, "the employee must demonstrate by a preponderance of the evidence only entitlement to the disputed leave.... [T]he intent of the employer is immaterial." *Id.* However, we are also mindful that "[u]nder FMLA, an employee who requests leave or is on leave has no greater rights than an employee who remains at work." *Gunnell*, 152 F.3d at 1262 (10th Cir. 1998) (citing 29 C.F.R. § 825.216(a)).

*Id.* at 960-61. Thus, a prima facie case under an interference/entitlement theory requires a showing of FMLA leave entitlement, a denial of substantive rights under the FMLA, and a causal connection between the two. *Id.* at 961.

-7-

In *Smith*, we upheld a jury verdict concluding that the plaintiff's FMLA rights were violated when, while on leave, she was fired for failing to fully train junior employees to perform her job. *Id.* at 959. Although the plaintiff had been asked to train the junior employees prior to taking FMLA leave, the employer did not monitor or impose a deadline for such training. *Id*. at 961. We determined the jury could reasonably infer that had the plaintiff not become ill and taken FMLA leave, there would have been no need for junior employees to perform her work. Thus, her employer would have remained satisfied with her performance, and she could have continued her employment indefinitely without training junior employees. *Id*.

Dry contends his situation is similar. He claims the district court was required to enter judgment in his favor because it is uncontested that:

> Had he not been needed at home during his wife's illness, . . . Mr. Dry would not have needed medical verification of the recurrence. Had the doctor's first note been error-free, [he] would not have needed a corrected note. Had the first termination letter for missing work during the time [he] was home caring for his wife, a letter which presumably would never have been sent if the first medical note had been accurate, not been mailed, his absences from April 22 until the second termination letter arrived would never have been incurred.

(Appellant's Reply Br. at 5.) Thus, seemingly content to live in the house that Jack built, he concludes his dismissal is directly connected to his entitled FMLA leave.

-8-

That reasoning is fatally flawed. In regards to the absences prior to April 21, Dry failed to perform his FMLA duties. He had a duty to timely provide the medical documentation requested, which he virtually ignored. 29 U.S.C. §§ 2613(a), 2614(3)(a). He did not respond in any way to Boeing's written request, dated April 2, 1998, until the first deadline on April 10, when he merely agreed to get the documentation. On April 16, Dry informed Boeing he did <u>not</u> have correct documentation, but would get it. Despite his receipt of Dr. Topping's permission to return to work as of April 15, Dry did not return to work and did not submit the corrected documentation until May 15, nearly six weeks after Boeing's initial request. Thus, he failed to satisfy his duty under the FMLA to timely provide the necessary medical documentation.

Further, in argument totally excusing his own conduct, Dry claims his unexcused absences after April 21,1998, were Boeing's fault. He asserts he did not return to work on April 22 because he received a termination letter in the mail on that day. The logic eludes us. At best, his wife's doctor excused him only through April 21. Dry's shift started at 7 a.m.; we presume the mail is not delivered until some time after that, so he should have been at work on April 22. Had he gone to work, he would have avoided any confusion created by the draft termination letter.

Despite his tardiness in providing the requested documentation, Boeing

generously granted Dry FMLA leave for all days for which he submitted medical documentation—March 9 to April 21, 1998. However, in the absence of an entitlement under the FMLA, he had no excuse for being absent from work from April 21 forward.[6] Consequently, his termination was caused by voluntarily missing weeks of work without explanation. His attempt to connect his termination to his FMLA leave is unavailing. *See Gunnell*, 152 F.3d at 1262.

## II. Progressive Discipline Policy

Dry contends the district court erred in denying his Motion to Amend the Judgment based on Boeing's failure to follow its progressive discipline policy. We disagree. Boeing's "Attendance Standard Policy" specifically exempts certain situations from progressive discipline. Section IV.D of the policy states:

> Each day of a period of consecutive unpaid days of absence, for other than verifiable medical reasons, shall be considered as separate infractions. [Note: Unreported absences of four or more consecutive work days . . . may result in dismissal of the employee for "Extended Absence". (Code 32)].

---

[6] Dry asserts the district court abused its discretion by basing its decision solely on Dry's absences between April 16 and April 21, 1998. He reasons this was the sole basis of the court's decision because the district court found Dry could reasonably have believed he was fired as of April 22, 1998, but his absences between April 16 and 21 remained unexplained. *Dry v. Boeing Co.*, Order and Memorandum Opinion, No. 00-1206 at 9 (D. Kan. July 9, 2001). While the district court did find the mistakenly sent draft could be misleading, the court's decision was not as narrow as Dry represents.

He also argues "Boeing's acceptance of Dr. Topping's note . . . through April 21, 1998 created a governing fact which the district court was obligated to recognize in resolving the parties' dispute." (Appellant's Br. at 22.) Dry offers no legal authority or cogent argument to support his objection. Therefore, we will not consider it on review. *Phillips v. Calhoun*, 956 F.2d 949, 953-54 (10th Cir. 1992) (citation omitted).

(Appellant's App. at 159.) Dry accumulated approximately three weeks of unexcused absences after his documented FMLA leave. These absences totaled nearly four times the minimum required to dismiss an employee for extended absences under the policy. Consequently, the district court correctly determined Boeing did not violate its progressive discipline policy.[7]

**CONCLUSION**

There is ample support in the record to establish that Dry's termination for excessive absenteeism did not violate his FMLA rights and Boeing followed its disciplinary policy. Accordingly, we **AFFIRM**.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

---

[7]Dry's request that his case be assigned to a new district court judge on remand is moot as we find against him on all claims.