**Peggy ALLENDER, Plaintiff,**

v.

**RAYTHEON AIRCRAFT CO., Defendant.**

No. 03–1396–JTM.

United States District Court, D. Kansas.

Oct. 15, 2004.

Jim Lawing, Wichita, KS, for Plaintiff.

Deena Hyson Bailey, Terry L. Mann, Martin, Pringle, Oliver, Wallace & Bauer, LLP, Wichita, KS, for Defendant.

## MEMORANDUM AND ORDER

MARTEN, District Judge.

This is an action by plaintiff Peggy Allender against her former employer, Raytheon Aircraft Company, alleging Raytheon violated her rights under the Family Medical Leave Act. Raytheon has moved for summary judgment; Allender has moved for partial summary judgment. Based upon the evidence submitted, the court will grant Raytheon's motion, and deny the motion of the plaintiff.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital,* 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.,* 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.,* 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed. R.Civ.P. 56(e)) (emphasis in *Matsushita* ). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**Findings of Fact**

Defendant Raytheon is a manufacturer of aircraft for general aviation and military use. Plaintiff Allender worked for Raytheon between June 22, 1987, and September 17, 1999, when she was involuntarily terminated due to violation of the company's attendance policy. Allender was hired by Raytheon on June 22, 1987, and was classified as a Radio and Electrical Assembler, Job Code 020, Labor Grade 8. Throughout her employment, Allender worked in hourly-compensated positions which were governed by the collective bargaining agreement between Raytheon and the International Association of Machinists and Aerospace Workers ("IAM").

As a full-time hourly employee of defendant, Allender was given a specified amount of sick leave each year, pursuant to the collective bargaining agreement. After the first year of employment, an employee had three days of sick leave. With increasing length of service, the amount of sick leave increased, so that an

employee with 10 or more years of service was given 80 hours of sick leave per year. The sick leave for the year is advanced on the employee's anniversary date. If an employee does not use all of his or her sick leave in a given year, it can be banked and carried forward. If an employee takes a leave of absence in excess of 30 days, the employee's anniversary date is extended by an amount equal to the length of the leave of absence.

Raytheon has, for many years, utilized an attendance policy that is geared to a series of warnings regarding poor attendance. Before an employee has any attendance infractions counted, she is first permitted to utilize any unused sick leave. After all available sick leave is used, attendance infractions are counted. If an employee has more than four infractions in a 16–week period, she is given a Step 1 warning. If an employee has a Step 1 disciplinary warning and continues to have unsatisfactory attendance, she is given a Step 2 disciplinary warning. A Step 2 warning remains on an employee's record for one year. During that year, if the attendance continues to be unsatisfactory, the employee is given a Step 3 action, which is termination. Supervisors generally counsel employees regarding poor attendance prior to giving any step warnings.

Peggy Allender was a probationary employee for the first 76 days of her employment. After the successful completion of the probationary period, however, Allender began to demonstrate attendance problems. These attendance problems were noted on performance reviews given to Allender at various intervals. The best attendance rating ever gained by Allender was "marginal." Far more often, her attendance was rated as "unacceptable," beginning shortly after the completion of her probationary period, and continuing throughout her employment.

Allender was issued several Step 1 and Step 2 attendance warnings during her employment, including the following: June 6, 1991—Step 1; August 7, 1992—Step 1; February 26, 1993—Step 2; July 28, 1994—Step 1; September 30, 1994—Step 2; March 7, 1997—Step 1; July 15, 1997—Step 2; September 9, 1998—Step 1; October 26, 1998—Step 2; September 16, 1999—Step 3 (Termination).

Allender took several medical leaves of absence in the early part of her employment. For example, she was on leave of absence from December 21, 1988, through May 1, 1989, due to a pregnancy and delivery. She was on medical leave of absence from February 27 to March 29, 1990. And she was on leave of absence from June 26 to July 26, 1990.

The FMLA did not apply to Raytheon until February 5, 1994. The company published a flyer regarding the FMLA, and gave it to all employees.

Allender began using FMLA leave in 1994, and continued to use it in 1995 and 1996, successfully completing the paperwork necessary to have leave approved. Allender had experienced recurring urinary tract infections since at least 1990, and she had an outpatient surgical procedure on October 21, 1996. Raytheon approved FMLA leave for that three-day absence.

In 1997, Allender had used all of her available sick leave before the end of February. She then began seeking FMLA leave for her bladder condition, and asked for FMLA leave to cover her absences on Friday, February 28, and March 5 and 6, 1997. Raytheon denied the request because the physician's certification form indicated only that Allender had been diagnosed as having interstitial cystitis when

she had surgery, some four months earlier. The certification form did not indicate any ongoing treatment regimen or state the expected duration of the condition.

On May 1, 1997, Allender resubmitted her request for FMLA leave for February 28 and March 5 and 6, 1997. She added several other dates to the request, including Monday, March 24, and April 15, 1997. Her doctor wrote the company a letter stating that she was under his care, and that she had "apparently been out from work on February 28, March 5, 6th, and 24th, and April 15." (Def.Exh. 20). Raytheon denied the request, stating that Allender had not provided a medical certification for the days requested.

Allender's doctor had indicated that he was going to do another surgical procedure on May 6, 1997, and Raytheon approved FMLA leave for May 6 through 9, 1997. Allender had a post-surgical check on June 4, 1997, and the company approved FMLA leave for that absence as well.

Allender subsequently revised the dates she believed should have been counted as FMLA. On June 26, 1997, she submitted a letter stating that she was ill with her bladder condition on March 5, March 24, March 31, April 14, and April 29, 1997. In support of that letter, Allender supplied two pages of her records from the Wichita Clinic. Raytheon denied FMLA leave for those dates, stating that the documentation supplied did not substantiate that the problem qualified for FMLA.

Allender disagreed, and asked the Department of Labor to intervene. Raytheon responded that the bladder condition was not a "serious health condition."

The Department of Labor asked for a medical opinion from Dr. James A. Littell. Dr. Littell reviewed the records and concluded that Allender's bladder condition did not qualify as a "serious health condition" under the FMLA. The Department of Labor then requested an additional opinion from a specialist. Dr. George Zakharia, a urologist, confirmed that Allender did not have a serious health condition.

As a result, the dates requested by Allender were not approved for FMLA leave.

From her use of the company's FMLA program, Allender became aware that, in order to have FMLA leave approved by the company, she had to submit a leave request specifying which dates she wanted considered, as well as a properly completed physician's certification form. She also knew that, unless FMLA leave was approved, the company's ordinary attendance policies applied, and that under those attendance policies, an employee who reached a Step 3 warning would be terminated.

Raytheon received documentation by October, 1997 showing Allender's physician was Dr. Jacques Blackman of the Wichita Clinic.

Allender's attendance problem continued throughout the remainder of 1997, particularly on Mondays and Fridays and around holidays and vacations. She was absent on Friday, June 27; Monday, July 21; Friday, August 29; Thursday and Friday, October 14 and 15; Friday, November 21; Monday, November 24; and Tuesday, November 25. Thursday, November 27 was Thanksgiving and both that day and the Friday after Thanksgiving were company holidays.

Allender received her yearly allotment of 80 hours of sick leave on December 9, 1997. She was then absent due to illness on the very next day, December 10, 1997, and again on Friday, December 19, 1997. Sick leave was provided for those days.

At the beginning of 1998, Allender had 64 hours of sick leave remaining. She was absent due to illness on Thursday, January

8, 1998, and the afternoon of Friday, January 9. She was absent due to illness on Monday, January 19, Tuesday, January 27 (partial absence), and Friday, January 30. She was absent due to illness on Wednesday, February 4, and Monday, February 16, and Tuesday, February 17, 1998. At that point, Allender had used her entire sick leave allotment for the year.[1]

After using all of her sick leave in early 1998, Allender was absent on Monday through Wednesday, March 9–11, 1998. She was counseled regarding her attendance on March 13, 1998.

Allender stated in her deposition that the facial pain was severe immediately after the injection by her dentist, but she did not see her doctor about the pain until April 23, 1998. On a visit to the doctor on April 17, 1998, Allender had complained primarily about having a sore knee. On a visit to her doctor on April 21, 1998, Allender only reported having a headache and being depressed.

On April 17, 1998, Allender commenced a 51–day medical leave of absence, returning to work on June 26, 1998. The reason for the leave request began with a sore knee, and eventually evolved into a complaint about the facial pain.

On June 2, 1998, Allender faxed Raytheon an FMLA certification signed by Debra Davis, a physician's assistant of Dr. Blackman, which stated Allender was suffering from facial pain following the February, 1998 dental procedure, and that the pain was a category 5 "serious health condition." (Plf.Exh. 3).

Allender was then absent on Wednesday and Thursday, July 15 and 16, 1998. Since she had no sick leave available, the absences were counted as infractions. Allender was then absent on Thursday and Friday, July 30 and 31, 1998. Again, the absences were counted as infractions. And she was absent on Friday, August 14; Monday, August 17; and Tuesday, August 18, 1998. These absences were counted as infractions.

According to her medical records, Allender saw her doctor on August 14, 1998, primarily due to swelling in her leg, and went back to her doctor on August 17, 1998, complaining about shortness of breath and swelling in her legs. Her doctor ordered an echocardiogram.

Allender was absent on Monday, August 24, and Tuesday, August 25, 1998. Because she had no sick leave, the absences were counted as infractions. Allender saw her doctor on August 24, 1998, regarding the swelling in her legs, but the doctor reported to her that her echocardiogram was normal, and that he thought the best course of action for her would be to stop taking all the medication she was using.

On August 24, 1998, Allender gave Raytheon a note from Dr. B.J. Odenheimer, indicating she had seen him that day. On August 24, 1998, both Allender and Dr. Odenheimer signed an FMLA form showing a diagnosis of facial pain. Dr. Odenheimer indicated that the pain was a "serious health condition" under categories 2 and 4, because the condition provided for incapacity of more than three consecutive

1. Although Raytheon was unaware of it at the time, Allender had a dental cavity filled in February of 1998. Allender claims that the dentist in some way damaged a nerve, causing her severe facial pain and numbness that continues to the present. Although she has had a variety of tests to determine the origin and status of the facial pain, none of her physicians or neurologists have been able to find any objective basis for the pain Allender reports. Allender stated in her deposition that she filed a malpractice suit against her dentist, but dropped it after her lawyer told her there was insufficient evidence to support her claim.

calendar days, required continuing treatment, and was a chronic condition continuing over an extended period of time. Dr. Odenheimer indicated that the pain commenced "4/98" and was of "unknown duration." (Plf.Exh. 4).

Raytheon received the August 24 note, but asked that Allender use the FMLA Leave Form the company had developed.

Allender was absent for personal business on Wednesday, September 2, 1998. The absence was counted as an infraction.

On September 9, 1998, Allender was given a Step 1 written reprimand for her attendance. The warning notified Allender that her attendance was unacceptable, and in violation of Policy & Procedure 32–3001. Allender was absent two days later, on the afternoon of Friday, September 11, and again on Monday and Tuesday, September 21 and 22, 1998. There is no record that Allender received any medical treatment on any of those dates.

On September 18, 1998, D.L. Mills, a physician's assistant of Dr. Blackman, completed the Raytheon-approved FMLA form. The form stated Allender had "Atypical Facial Pain" which began on"2/98," and the probable duration was "unknown." (Plf.Exh. 7).

Allender was also absent on October 5 and 6. She saw Dr. Blackman on October 5. He reported to her that the neurosurgeon found no abnormality that would account for her face pain, and did not recommend further treatment. Dr. Blackman noted his concern about Allender's high doses of Lortab, and took her off that drug. No sick leave was available for any of these absences, so they were counted as infractions.

Allender was counseled regarding her attendance on October 7, 1998, and then absent the afternoon of Friday, October 23, 1998. On October 26, 1998, Allender was given a Step 2 written reprimand regarding her attendance. On the same day, Allender was put on medical verification. Under this program, Raytheon requires the worker to give written verification from his physician for each day absent due to illness, regardless of whether sick leave is available. The information from the doctor must state the diagnosis, and that the employee was unable to work on the days that were missed.

After the Step 2 warning on October 26, Allender was absent on Tuesday, November 3, and Friday, November 9, 1998. She was also absent on the afternoon of Wednesday, November 25, 1998, the day before the Thanksgiving holiday. No sick leave was available, and those absences were counted as infractions. Allender was counseled regarding her attendance on December 1, 1998.

Because of her leave of absence in 1998, Allender's anniversary date, which had previously been December 9, was moved to February 16, and no additional sick leave was given to Allender in January of 1999. Allender was absent on Wednesday and Thursday, January 27 and 28, 1999.

Allender's medical records indicate she saw her doctor for a Pap smear on January 28, 1999. She was counseled regarding her attendance on February 5, 1999.

Allender received her 80–hour sick leave allotment for 1999 on February 16, 1999. She took a day of vacation on Thursday, February 18, but then was ill on Friday, February 19, and on Monday, and Tuesday, February 22 and 23. Paid sick leave was provided for those absences. Allender went to her doctor for allergic rhinitis on February 18, 1999, and she was given prescriptions for a nasal spray and a decongestant.

Allender was absent on Monday, April 5, and Thursday, April 8, 1999. Sick leave was provided.

Allender saw Debra Davis, a physician's assistant, on April 5, 1999. Davis referred Allender to Dr. O'Dea, an anesthesiologist who works in the Wesley Emergency Room, and Allender went to the Wesley Emergency Room to see Dr. O'Dea. The records of the exam show Dr. O'Dea found "mild tenderness R[ight] face; normal sensation," referred her to Dr. Brewer, and prescribed no further medication. (Def.Exh. 15),

On April 8, 1999, Allender again saw Physician's Assistant Davis. Allender reported that she wanted a referral to Dr. Brewer, and reported that she wanted to resume taking Prozac because she was depressed about her teenage daughter drinking alcohol and dating a man who used illegal drugs. Davis wrote a note indicating that Allender needed to be released from work on April 8 due to "medical reasons." (Def.Exh. 44).

Allender was absent for personal business on April 21 and 22, 1999. Those absences were counted as infractions by Raytheon, and Allender was counseled about her attendance on April 27, 1999.

Allender was absent on May 25–27, 1999. Paid sick leave was provided.

Allender was absent on June 1, 1999, due to personal business. The absence was counted as an infraction. Allender was counseled regarding her attendance on June 2, 1999.

The June 9, 1999 performance evaluation for Allender showed that she had missed 22 days of work and four partial days in the year since her previous evaluation. At that time, Allender had fulfilled the threshold eligibility requirements for FMLA coverage.

Allender was absent on August 3, 1999. Paid sick leave was provided.

Allender was absent for personal business on August 17, 1999. The absence was counted as an infraction.

Allender was absent from work on Monday, Tuesday, and Wednesday, August 23–25, 1999. Allender had one day of sick leave remaining, which was applied to August 23.

When Allender returned to work on Thursday, August 26, 1999, she was again counseled regarding her attendance. Allender was then absent on Friday, August 27, 1999. Allender had no sick leave, and the absence was counted as an infraction.

At some time before August, 1999, Allender submitted to Raytheon a medical report from her treating physicians, Dr. Leonard A. Klafta and Dr. Blackman, dated September 29, 1998, showing that the underlying nature of her medical problem of facial pain was related to a root canal performed two months before in April, 1998. On August 23, 1999, Dr. Blackman's office told Allender she could increase her dosage of Doxepin "if she needs to." (Def.Exh. 15).

On Monday, August 30, 1999, Allender did not report for work. At 9:46 A.M., she was at the Dillon's store at Central and Maize, and faxed in the request for FMLA leave.

The top portion of the form was completed by Allender, and the bottom portion was completed by her physician, Dr. Jacques Blackman. Dr. Blackman had signed his part of the form on August 23, 1999. Allender had initially written that she wanted leave on August 23 and September 3, 1999, but at some point before sending the fax, she changed "August 23" to "August 23–25" by interlineating a hyphen and the numeral 25. The leave request form noted that she had an appoint-

ment with Dr. Alan Brewer, a specialist, on September 3, 1999. Raytheon approved FMLA leave for August 23–25 and September 3, 1999.

Allender was aware on August 30, 1999 that she was not at work, and instead was at the Dillon's store during a time when she ordinarily would have been at work. She also knew that she had not reported for work on Friday, August 27, 1999. Nonetheless, Allender did not change the faxed request form to request leave for August 27 or August 30—work days she had already missed at the time she sent the fax on August 30, 1999.

After sending the fax which sought FMLA leave for August 23–25 and September 3, Allender was also absent from work on Tuesday, August 31, Wednesday, September 1, Thursday, September 2, and Friday, September 3 (an absence for which she had requested FMLA leave). Monday, September 6, was Labor Day, so plaintiff did not work that day. Her absence from work continued on Tuesday, September 7, and Wednesday, September 8.

Allender testified at her deposition that, during the time she was off work from August 23 through September 8, 1999, she periodically called her supervisor, Carol Lipsmeyer, and requested FMLA leave. However, uncontroverted evidence shows that (1) Allender's faxed FMLA leave request only sought leave for four days (August 23–25, September 3); (2) Allender left voice mail messages saying only that she was "ill;" and (3) from August 29 to September 2, Lipsmeyer was performing Na-

tional Guard service in Colorado Springs and never spoke with Allender.

After submitting the August 30 fax, Allender is not aware that she ever sent in any other leave request pertaining to her own illnesses at any time before her termination on September 17, 1999.[2]

Allender knew that she had to submit a leave request form in order to have a request for FMLA leave approval. She also knew that a request for leave would be denied if she did not comply with the company's requirements concerning requesting leave. She knew that if FMLA leave was not approved, the company's ordinary attendance policy requirements applied; that, as of August 26, 1999, she was on a Step 2 with four infractions; and that if she had a Step 2 warning, and more than four infractions, she would be at a Step 3, termination.

Allender called in and left voice mail messages during the period from August 23 through September 8. On August 23, 1999, Allender's message indicated she was ill with her facial pain. When Allender left voice mail messages after August 23, 1999, she only indicated that she was "ill." Allender returned to work on September 9, 1999. Between September 9 and when she was terminated on September 17, 1999, Allender never submitted an FMLA leave request form for any of the seven days she was absent from work during this period: August 27, 30, 31, September 1, 2, 7 and 8. Because she made no timely request for FMLA leave for those seven days, they were counted as attendance infractions. Allender, thus, had nine attendance infrac-

---

**2.** Allender did later submit a request for leave to be absent for her twenty-year-old daughter's tonsillectomy on September 22, 1999. FMLA family leave is not required if the leave is requested to attend a child who is not a minor, unless the child is "incapable of self care because of a mental or physical disability." 29 C.F.R. § 825.113(c)(1) and (2). Further, Allender had already been terminated several days previously, and the FMLA request was denied.

tions between June 1 and September 9, 1999.

Raytheon deemed Allender's attendance unacceptable under its policy. Her supervisor, Carol Lipsmeyer, asked Allender to provide information relative to the medical verification memorandum.

When Allender returned to work on September 9, 1999, she spoke with her supervisor, Carol Lipsmeyer about where she had been during the days she had not reported to work. On or about September 15, 1999, Allender submitted an undated note from Dr. Brewer, who stated that Allender was taking various medications, that her condition could take up to five years to resolve, and Allender had been off work until September 9, 1999 because she was dizzy from starting a new medication, Serzone. Allender stated that the increased medication made her drowsy and unable to work, and that she had been off work until she could see Dr. Brewer. Raytheon knew, from the form faxed by Allender on August 30, that Allender had an appointment with Dr. Brewer on September 3.

Also on or about September 15, 1999, Allender faxed to Cate Walker a note from Physician Assistant Davis, stating that Allender was seen in their office on August 3 and 23, 1999, and that her dose of Doxepin had been increased on August 23, causing Allender to be drowsy and unable to drive. Davis went on to state that Allender "was off 8–23–99 through 9/8—on/off until she could get in to see Dr. Brewer. He is a specialist." Def. Exh. 49.

Raytheon knew (from the August 30 fax) that Allender's appointment with Dr. Brewer was on September 3, 1999. The information provided by Dr. Brewer and Ms. Davis did not satisfy the requirements established in the medical verification

memorandum of October 26, 1998, and Allender was so informed. Neither of the notes complied with the requirements for an FMLA physician's certification, and Allender was aware that the company would not approve FMLA leave without a properly completed physician's certification.

Allender contends that she spoke to Carol Lipsmeyer at some point during her absence between August 27 and September 8, 1999. However, Carol Lipsmeyer was, at the time, a Captain in the Kansas Air National Guard, and was away from work on military duty from August 29 through September 2, 1999. She was on duty in Colorado Springs, and had no communication with Allender while on military duty.

Allender was terminated on September 17, 1999, for unsatisfactory attendance.

## Conclusions of Law

The court will deny plaintiff's motion for partial summary judgment, and grant the defendant's motion for summary judgment. Specifically, the court finds that the plaintiff has failed to articulate a prima facie case that Raytheon interfered with her FMLA leave entitlement. *Dry v. Boeing Co.*, 92 Fed.Appx. 675, 677, 2004 WL 309323, *3 (10th Cir.2004). Further, the plaintiff has failed to prove that she complied with the notice requirements of the FMLA. *See Holmes v. Boeing Co.*, 166 F.3d 1221, 1999 WL 9760, *3 (10th Cir. 1999). Because the court reaches these conclusions, it need not reach the additional argument advanced by Raytheon relating to an alleged failure by Allender to mitigate damages.

Plaintiff's claims center on the allegation that she was denied her FMLA leave entitlement when she was terminated in regard to work absences in 1999.[3] As to

3. There are periodic intimations in the sum-   mary judgment briefing that some claim ex-

those claims, Allender has failed to demonstrate that she was entitled to leave on the seven work days in question: August 27, 30, 31, September 1, 2, 7, or 8 of 1999. Allender knew from her work history at Raytheon that a physician certification was required for FMLA leave; she also knew that a leave request without physician certification would be denied.

■ Plaintiff, to present a prima facie case, must show that she was entitled to FMLA leave, that she was denied her substantive rights under the FMLA, and demonstrate a causal connection between the two. *Dry v. Boeing Co.,* 92 Fed.Appx. 675, 677, 2004 WL 309323, at *3. Allender cannot show that she was entitled to FMLA leave because she cannot show that she gave the required notice and certification to Raytheon. See. 29 C.F.R. §§ 825.114(a)(2) (requiring notice of serious medical condition); 29 C.F.R. § 825.305 (requiring certification).

■ Allender argues that physician certification can only be required if the employer, for each requested absence, specifically requests it, citing *Perry v. Jaguar of Troy,* 353 F.3d 510 (6th Cir.2003). The court does not agree. The plaintiff in *Perry* had never used FMLA before, and had not been informed generally of the need for physician certification. Allender, of course, had been both generally informed of Raytheon's requirement by the flier distributed to employees, she had frequently used FMLA previously and has conceded that she was quite aware that Raytheon required physician certification, and that FMLA leave requests without certification would be denied.

Allender submitted two notes around September 15. These do not meet the standards required by 29 C.F.R. § 825.306(b) by showing the existence of a serious health condition, the medical facts underlying the condition, the date it commenced and its likely duration, whether the resulting leave should be intermittent or chronic. Further the September 15 notes are insufficient since 29 C.F.R. § 925.305(b) requires that such certification must be supplied in advance if foreseeable; otherwise, the certification must be submitted in 15 days. The September leave requests were submitted 19 days after the first absence. More importantly, the need for leave was clearly foreseeable: Allender submitted her August 30 fax request, based on the same general complaint of facial pain, but which targeted for leave only certain days before and between the seven days which were not certified. Allender failed to do so as to those other dates, even knowing of Raytheon's policy requiring certification.

The court also finds that Allender did not supply the notice required by FMLA as to the seven days in question. At best, she merely left voice mail messages with Raytheon stating that she was "ill." Allender had extensive background and knowledge of Raytheon's FMLA requirements, and had periodically sought and obtained FMLA leave at Raytheon by complying with the company's physician certification requirements. On August 30, Allender sent her fax request which specifically requested FMLA leave for four days only: August 23 to 25, and September 3—even though she knew at that time that she had also already missed or would miss work on August 27 and August 30. Under 29 C.F.R. § 825.302(a), an employee seeking

---

ists as to FMLA leave prior to 1999. However, the Pretrial Order controls the course of the litigation. *Trujillo v. Uniroyal,* 608 F.2d 815 (10th Cir.1979). The Pretrial Order in the present case (Dkt. No. 69) clearly establishes that the claims here relate only to interference with the 1999 absences in late August and early September of 1999.

FMLA protection must give notice of her request 30 days before the leave (if the need for leave is foreseeable), or "as soon as practicable," if the need is not foreseeable. Even in the most favorable reading of the facts (Allender talked to Lipsmeyer on September 3), Allender waited over five business days after her first absence (August 27) to give notice of FMLA leave, even though the need for leave was both foreseeable, and indeed actually foreseen by Allender. This does not meet the standards of the FMLA.

Raytheon is entitled under FMLA to impose reasonable notice requirements. See 29 C.F.R. § 825.302, 825.303. Allender suggests that such requirements carry no weight, citing cases outside the Tenth Circuit such as *Cavin v. Honda of America Mfg.*, 346 F.3d 713 (6th Cir.2003). But the *Cavin* court itself explicitly noted that the rule in the Tenth Circuit is to the contrary: in the Tenth Circuit, "an employee cannot seek FMLA relief in the event of his noncompliance with his employer's specific notice requirements absent an 'allega[tion] that his physical condition was such that *he could not comply* with defendant's reasonable notice requirements." *Id.* at 721 (*quoting—and adding emphasis to—Holmes v. Boeing*, 1999 WL 9760, at *3, 1999 U.S.App. LEXIS 377 (10th Cir.1999))..

Allender acknowledged in her deposition that she knew, in August and September of 1999, that if she failed to submit a request for FMLA leave or a properly completed physician's certification, the request for leave would be denied. She also knew—in the absence of FMLA coverage—Raytheon's ordinary attendance policy. And she knew that at that time she was at Step 2 of Raytheon's progressive absentee disciplinary policy, and that additional unexcused absences would subject her to termination. She clearly could com-

ply with Raytheon's FMLA policies, she had done so both in the past and contemporaneously.

IT IS ACCORDINGLY ORDERED this 15th day of October, 2004, that plaintiff's Motion for Partial Summary Judgment (Dkt. No. 75) is denied; defendant's Motion for Summary Judgment (Dkt. No. 79) is granted.